Hitchcock, C. J.
At common law, if two or more persons are charged as the joint makers of a promissory note, or the joint obligors in a bond, the plaintiff suing upon such note or bond cannot recover, unless all charged are found to be liable. If, upon trial, it shall be found by a court or jury, that one of the individuals charged, did not make the note or execute the bond, such finding, for the purposes of that action, must operate to discharge all the defendants, although it may so happen that all the other defendants are in default. If this be so, then it is apparent that the original judgment upon which the scire facias under consideration was issued, is erroneous. That judgment should have been in favor of all the defendants, whereas, in fact, it was against one of them.
But it is said that the defendant, Hart, who was not served with process in that case, and was not a party to the suit, cannot avail himself of that error, in the present proceeding. This is true. But if the record, which is the foundation of the scire facias, shows that no judgment could have been legally rendered against him had he been served with process in that case, it is a sufficient reason why he should not now be made a party to the judgment which was then pronounced. He cannot be placed in a worse situation, in consequence of not having been served with process, than if he had been served. He is-now entitled to the same defenses he could have made in the original suit.
In the opinion of the court, and proceeding upon the principles of the common law, no judgment could, with propriety, have been entered against the defendant, had he been a party in the original case, after it was found that two of the individuals, charged as joint makers with him of the note, were not makers. And as no judgment could have been rendered against him in the original suit, s so no judgment can be rendered against him upon the scire facias.
*374 I do not understand that counsel for the plaintiff in error claims that, according to the principles of the common law, they would be entitled to a judgment against the defendant in the present case. But it is claimed that these principles have been changed by our own state legislation, and especially by the act of March 12, 1844, “ to regulate the practice of the judicial courts,” (42 O. L. 72.) This act prescribes that the holder of a promissory note, or bill of exchange, may commence a joint action for money had and received, against all the original makers and indorsers thereof, and recover against one or more, or against all the defendants, as the justice and law of the case, as disclosed on the trial, shall justify and require. On the part of the defendant in error, it is insisted that this statute can have no influence upon the case, because the plaintiff in this case is a bank, and also because, although the plaintiff had been an individual, still the case is not within the statute, inasmuch as the defendants were not charged as makers and indorsers, but merely as joint makers of the note in suit.
The points raised are important, and require a careful examination of the legislation of the state upon the subject. It is believed that but three statutes have been enacted, parts of which bear upon it; at least but three have been referred to. The first is the act of January 28, 1824 (Swan’s Statutes 147), “ to regulate judicial proceedings, where banks and bankers are parties.” The ninth section of this act provides “ that when any sum of money, due and owing to any bank or banker, shall be secured by indorsement on the bill, note, or obligation for the same, it shall be lawful for such bank or banker, to bring a joint action against all the drawers and indorsers; in which action the plaintiff or plaintiffs may declare against the defendants for money lent and advanced, and may obtain a joint judgment and execution for the amount found to be due; and each defendant may make the same separate defense against such action, either by plea or upon trial, that he could have made upon a separate ac *375 tion; and if in the case herein provided for, the bank or banker shall institute separate actions against the drawers and indorsers, such bank shall recover no costs.”
The object of this section is manifest. It was to prevent multiplicity of , suits and accumulation of cost. Previous to its enactment, separate suits might be brought against drawers and indorsers, and separate suits against each indorser. This was an evil, and to remedy this evil the law was changed. This law, however, had no reference to any other than indorsed paper. It would not be applicable to the makers of a note payable directly to the bank, although those notes might be joint, or joint and several. Perhaps the reason of confining this mode of proceeding to indorsed paper might be, that at that day, banks were not in the habit of receiving paper payable directly to themselves. With respect to such paper, if any existed, the bank must sue as at common law, and the case must be determined upon the principles of the common law. If defendants were charged jointly, the recovery must be against them jointly, or there could be no recovery. Neither had the law reference to suits by individuals — these were left as before, to commence suits joint or separate, according to the nature of the contract upon which suit was commenced. This law was in force at the time .of the enactment of the law of 1844, before referred to— and until that time a different rule was prescribed to banks and to individuals, relative to the commencement of certain classes of cases. It continued in force until March 8th, 1845, when it was repealed by an act with a similar title, (43 Ohio L. 67.) This latter act contained a provision substantially the same as the 9th section of the act repealed.
The second section is as follows: “ In actions by incorporated banks, on notes, bonds, or bills, transferred to such bank by indorsement, the bank may sue the. makers, or drawers and indorsers jointly, and declare against them for money loaned and advanced, and file with the declaration a copy, or pertinent description of the note, bond, or bill, upon which suit is brought, with the indorsements thereon, and *376 upon trial, give such note, bond, or bill, with the indorsement or indorsements thereon, in evidence, and have judgment against all the defendants upon whom process shall have been served, jointly, for the amount due' thereon, and in all such cases the defendants may plead and defend jointly, or severally; provided, that if the summons or capias shall be returned, in any such case, as to some of the defendants served, and as to one or more, not served, the plaintiff may have a separate action upon such bond, note, or bill, against such defendants as have not been served with process, for the amount due therein, and proceed in such action, in the same manner as if no joint action had been brought; provided, also, that if separate suits are brought in the first instance, the bank shall not recover costs.”
This does not vary essentially from the ninth section of the act of 1824, but it dispenses entirely with the scire facias to make a party who had not been served with process, although named in the writ, a party to the judgment, and authorizes a different mode of proceeding to effect, in substance,, the same object.
This law still continues in force, so that in fact, since 1824, we have had a law, prescribing a different mode of proceeding upon indorsed paper, where a bank is a party, and where an individual is a party, unless that distinction is done away by the law of 1844.
This law of 1844, is entitled an act “ to regulate the practice of judicial courts.” (42 Ohio L. 72.)
In the first section it is enacted, “ that in all actions, brought by the lawful holder of any promissory note, due bill, or bill of exchange, the plaintiff or plaintiffs may commence, and prosecute a joint action for money had and received, against all the original makers and indorsers thereof, and may give such note or bill in evidence, and each of the defendants may plead separate pleas and make separate defenses, and if upon the trial, any one or more of the defendants should make a successful defense, the court may never *377 theless render a judgment against the balance of said defendants, and if any holder of any note, due bill, or bill of exchange, shall commence and prosecute separate actions, against such makers or indorsers, he shall not recover costs in more than one of such actions.”
A question is raised whether a note not indorsed 'would come within the provisions of this enactment, and upon the solution of this question we do not concur in opinion. The first - part of the section requires or authorizes joint actions “ against all the original makers and indorsers,” clearly indicating that indorsed notes, were the instruments within the legislative mind. But towards the close of the section, where the penalty, if so it may be called, is prescribed for bringing separate actions, the phraseology is, “ shall commence and prosecute separate actions against such maker, or indorsers, he shall not recover costs,” etc. If the conjunction “ and” had been substituted in place of “ or,” between the words “ makers ” and “ indorsers,” there could have been no doubt upon the subject; as it is, there is room for doubt as to the intention. Still there is precisely the same difficulty in the act of 1824, regulating proceedings where banks are parties, with this difference, the conjunction “or” is used in the first part of the section, the conjunction “ and ” in the latter part. “ It shall be lawful for such bank or banker to bring a joint action against all the drawers or indorsers.” Indicating that all the drawers, or all the indorsers, must ■ be sued in one action. It is subsequently provided, however, “ that if the bank or banker shall institute separate actions against the drawers ‘ and indorsers ’ such bank or banker shall recover no-costs.” Notwithstanding this discrepancy, I believe it has never been doubted that the intention of the statute, was to authorize, nay to require, joint actions against drawers and indorsers.
Why was this act of 1844 passed, and was it intended to-apply to banks and bankers ? The expression used is, “ any lawful holder of a note.” Now a bank may be a “ lawful holder of a note,” and had there been no previous legislation *378 upon the subject, we should -probably have come to the conclusion, that the act was intended to apply to banks as well as to individuals. But so far as banks are concerned, no such legislation was necessary. For twenty years previous to 'the enactment of this law, banks were required to sue precisely as “ the lawful holder of a note ” is required to sue by this law. We suppose the primary, nay, the sole object of the legislature, in this enactment of 1844, was to prevent multiplicity of .suits, and accumulation of costs, in cases where individuals commenced actions. The intention w,as to prescribe to individuals, the same rules which had been previously prescribed to banks. The law of 1824, was left as it stood before — there was no change in it. Besides, if in this statute, the legislature intended to provide for the prosecution of suits by banks, as being “ lawful holders of notes,” why, at the very next session, did that body revive and re-enact the law of 1824 ?
After full consideration, we have been brought to the conclusion, that suits by banks are not within the meaning and purview of the act of 1844. That banks in commencing suits are to be controlled by the law of 1824, or rather by that law as re-enacted in 1845. That these laws, neither of them, prescribe the mode of proceeding, except upon in dorsed paper. That upon notes payable directly to banks they must sue as if there were no statutory provisions — and that in such cases the rules of the common law must prevail.

Judgment of the Court of Common Pleas affirmed.